IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUKE G. GRMEK,  Plaintiff,  vs.  KILOLO KIJAKAZI,  Defendant. | )  )  )  )  )  ) Civil Action No. 20-1676  )  )  )  )  )  ) |

ORDER

AND NOW, this 28th day of March 2022, the Court has considered the parties' motions for summary judgment and will award judgment in favor of Defendant. The decision wherein the Administrative Law Judge ("ALJ") denied Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, will be affirmed because it is supported by substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).[1]

---

[1] Plaintiff, who suffered serious medical problems arising from a traumatic brain injury ("TBI") caused by a 2016 motor vehicle accident ("MVA"), filed an application for DIB benefits under the Act on January 24, 2017. (R. 10, 15). However, the ALJ who heard Plaintiff's case determined that Plaintiff's date last insured ("DLI")—*i.e.*, the date he last met the insured status requirements under the Act—was June 30, 2015. (R. 12). Focusing on the time between Plaintiff's alleged disability onset (May 16, 2012) and his DLI, the ALJ determined that Plaintiff failed to prove that he was afflicted by any severe, medically determinable impairments during that three-year period. (R. 16). Thus, the ALJ denied Plaintiff's DIB application despite a medical expert's testimony that Plaintiff met the criteria for a presumptively disabling impairment *after* his 2016 MVA and resultant TBI. (R. 15—17). Plaintiff argues that the ALJ's decision is not supported by substantial evidence and that the record demonstrates not only severe and medically determinable impairments, but also the criteria for one of the presumptively disabling impairments listed in the regulations. The Court is unpersuaded by Plaintiff's first argument and, therefore, need not reach the second.

This Court reviews the ALJ's findings for substantial evidence. *Schaudeck v. Comm'r*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rutherford v. Barnhart*, 399

---

F.3d 546, 552 (3d Cir. 2005). This Court may not reweigh evidence or substitute its own findings for the ALJ's findings even where there is evidence in the record to support a "contrary conclusion." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

ALJs use a five-step evaluation to determine disability. 20 C.F.R. § 404.1520(a). At step one, the ALJ must "consider [the claimant's] work activity" to ensure he or she is not doing "substantial gainful activity." *Id.* § 404.1520(a)(4)(i). At step two, the ALJ "consider[s] the medical severity of [the claimant's] impairment(s)." *Id.* § 404.1520(a)(4)(ii). For the inquiry to continue, the ALJ must find that the claimant has at least one "severe medically determinable physical or mental impairment," or "combination of impairments," *id.*, that has lasted or is "expected to last for a continuous period of at least 12 months." *Id.* § 404.1509. Severity is proven if the impairment(s) "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are things like "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." SSR 85-28, 1985 WL 56856 at *3 (S.S.A. Jan. 1, 1985).

A non-severe impairment(s) produces "only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Id.* The inquiry here at step two of the evaluation is meant to be a "*de minimis* screening device" to rule out "groundless claims," therefore, doubts ought to be resolved in claimants' favor. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citation omitted). A claimant's satisfaction of his or her burden of proof at step two leads to step three where the ALJ asks whether the claimant's impairments meet or equal criteria for one of the presumptively disabling impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the criteria of a listed impairment are met, the claimant will be found disabled. *Id.* If not, the ALJ moves to steps four and five to assess the claimant's residual functional capacity ("RFC") and decide whether he or she can return to past work or adjust to other work. *Id.* § 404.1520(a)(4)(iv)—(v). At the fifth step of the evaluation the Commissioner has a limited burden of proof insofar as he or she must identify appropriate and sufficiently available work for the claimant but, otherwise, it is a claimant's burden to "establish that he became disabled prior to the expiration of his insured status." *Matullo v. Bowen*, 926 F.2d 240, 244 (3d Cir. 1990).

In this matter, the ALJ denied Plaintiff's application at step two, finding that Plaintiff's impairments were either non-severe or not medically determinable. (R. 13—16). Plaintiff challenges that determination and argues that evidence of his health problems from 2012 to 2015 was sufficient to satisfy the *de minimis* step-two inquiry. To support his argument that the evidence shows he suffered from more than "slight abnormalities," SSR 85-28, 1985 WL 56856 at *3, Plaintiff cites medical records from June 2012 showing that he experienced "balance disturbance, ataxia, lightheadedness, vertigo, hearing loss, tinnitus . . . neurological complaints with blurred visions, clumsiness of the extremities, confusion, headache, loss of consciousness,

paralysis and weakness of the extremities." (Doc. No. 14, pg. 15 (citing R. 293)). He further notes that he was on several medications at that time and that in early 2015 he "was noted to be suffering vertigo and dizziness, and carried diagnoses including chondromalacia, depression, lumbar disc degeneration," and others. (*Id.* (citing R. 332—34)). Around the same time, Plaintiff was noted to have experienced "increased neurologic-type symptoms, with numbness in his lower extremities, joint pain, muscle aches and pains," fatigue, "dizziness, [and] generalized muscle weakness," as well as use of a cane for ambulation. (*Id.* at pg. 16 (citing R. 340)). For additional support, Plaintiff cites medical records from 2016 and argues the ALJ should have reasonably inferred from that evidence that Plaintiff had severe impairments predating his DLI. Plaintiff also points to the testimony offered by medical expert ("ME") Dr. Debra Ann Pollack at his hearing where she testified that Plaintiff's difficulties with hearing and balance went back to 2012. Plaintiff suggests that Dr. Pollack opined that he was extremely limited in his "ability to interact with others in most situations" not only after his 2016 MVA, but also during the relevant period. (Doc. No. 14, pg. 16).

Addressing the last point first, the hearing transcript makes it clear that Dr. Pollack's opinion on Plaintiff's interaction limitations pertained to his post-2016-MVA condition. At the hearing, the ALJ asked Dr. Pollack: "*Based upon the symptoms of the TBI*, could you rate for me, please the ability of the individual to interact appropriately with the public?" (R. 43 (emphasis added)). Dr. Pollack responded that Plaintiff would be extremely limited in his interactions with the public, supervisors, and coworkers. (R. 44). Dr. Pollack's testimony in this specific regard is clearly irrelevant to the ALJ's evaluation of Plaintiff's impairments before the DLI. Turning to the rest of Plaintiff's step-two argument and pursuant to the deferential substantial evidence standard, the Court finds that there is insufficient justification for remand. After the ALJ decided that Plaintiff had not performed "substantial gainful activity" during the relevant period (R. 12), he found that Plaintiff had two medically determinable impairments before the DLI: obesity and bilateral sensorineural hearing loss. (R. 12). He further determined that those impairments had not "significantly limited the ability to perform basic work-related activities for 12 consecutive months." (*Id.*). The ALJ explained that there was "no evidence of any documented symptoms or limitations related" to Plaintiff's obesity, nor was there evidence that Plaintiff was "treated with hearing aids" or experienced limitations "related to his hearing loss, such as communication difficulties." (R. 13—14). Thus, Plaintiff's medically determinable impairments lacked the severity necessary to propel him to the next step in the evaluation.

Before terminating the evaluation, the ALJ explained why Plaintiff's other medical problems failed to satisfy the threshold requirement at step two. He summarized the same evidence Plaintiff now cites in support of his appeal, noting records from 2012 of Plaintiff's "reported ataxia with walking, falling, pre-syncope, and vertigo triggered by positional changes with turning head in either direction." (R. 14). He noted that Plaintiff also "reported clumsiness of the extremities, confusion, dysarthria, headache, hypesthesia [of] extremities, hypesthesia of face, loss of consciousness, and weakness of extremities." (*Id.*). The problem with this evidence, the ALJ explained, was that it failed to connect Plaintiff's medical problems with a medically determinable impairment. (*Id.*). Plaintiff's doctors did not definitively attribute his

3

symptoms to a specific underlying condition. (*Id.*). Plaintiff's treating neurologist speculated that his symptoms could be consistent with "preexisting chronic labyrinthitis or central nervous system dysfunction, but did not diagnose either condition." (*Id.*). "Neurologic examination showed normal cranial nerves." (*Id.*). Plaintiff's treating neurologist ordered "vestibular rehabilitation" because the tests "suggest[ed] that the patient has multisystem dysfunction." (*Id.*). Plaintiff did not go to therapy and returned a year and a half later reporting the same symptoms as well as blurry vision, lightheadedness, and vertigo. (*Id.*). Without providing a diagnosis, Plaintiff's treating neurologist referred him to "the regional balance center" but it did not appear Plaintiff visited the center. (*Id.*). Further, the evidence suggested that Plaintiff failed to return to his neurologist again before the DLI. (*Id.*). The ALJ considered this evidence as well as evidence from Plaintiff's primary care provider showing that, in November 2014, Plaintiff reported dizziness and "fullness and pain in his left ear." (*Id.*). In January 2015 Plaintiff reported "numbness in his lower extremity, joint pain, [and] muscle aches." (*Id.*). He was experiencing "intermittent dizziness" and using a cane at that time. (*Id.*). Later that same year Plaintiff experienced vertigo and muffled hearing. (R. 14—15). His primary care provider diagnosed an acute condition—eustachian tube obstruction. (R. 15). The primary care provider "listed dizziness, a symptom, and labyrinthitis, an acute condition considered but not diagnosed by the claimant's neurologist as the claimant's diagnoses." (R. 15). Based on this evidence, the ALJ determined that there was no "diagnosis for the claimant's neurologic complaints through the [DLI]" and, accordingly, decided that he could not find that Plaintiff's complaints were "symptoms of medically determinable impairments." (R. 15).

Consideration of the ME's testimony did not change the ALJ's decision in this regard even though she found impairments dating back to 2012. Dr. Pollack testified at the hearing that Plaintiff would meet the criteria for a TBI at Listing 11.18 *after* his 2016 MVA and discussed limitations arising from the TBI at length. (R. 39—55). The ALJ generally afforded Dr. Pollack's opinion "great weight" and accepted her testimony that Plaintiff's medical records demonstrated hearing loss as a medically determinable impairment prior to the DLI. (R. 15). However, he disagreed with her testimony that Plaintiff's vertigo constituted a medically determinable impairment because it was "documented as a symptom without an associated medically determinable impairment" in Plaintiff's pre-DLI medical records. (*Id.*). Thus, the ALJ concluded that, other than non-severe obesity and hearing loss, Plaintiff "did not have a medically determinable impairment prior to the date last insured, only symptoms without a determinable etiology." (R. 15).

This detailed consideration of the evidence supports the ALJ's decision that Plaintiff failed to prove the existence of a severe *and* medically determinable impairment prior to his DLI. The ALJ clearly articulated his consideration of Plaintiff's neurologist's records, his primary care provider's records, and the medical expert's testimony. Based on all the evidence, the ALJ logically concluded that he could not find a diagnosis for Plaintiff's neurologic complaints and, therefore, could not find his symptoms arose from a medically determinable impairment. Plaintiff advocates for an alternative interpretation of the evidence but, as the Court explained *supra*, amenability of evidence to a different conclusion does not undermine a well-supported

4

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 17) is GRANTED as specified above.

s/ Alan N. Bloch  
United States District Judge

ecf:   Counsel of Record

---

determination under the substantial evidence standard.  *Malloy*, 306 Fed. Appx. at 764. Accordingly, the Court will leave the ALJ's step-two decision undisturbed.  Having dispensed of Plaintiff's challenge to the step-two decision, it is unnecessary to address Plaintiff's secondary listings-impairment argument.  The Court will award summary judgment in Defendant's favor.